**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 09-cv-02429-REB-MJW

CHEVRON U.S.A. INC., a Pennsylvania corporation,

    Plaintiff,

v.

GREGORY D. TIMM, a Colorado resident,
CARY L. CARPENTER, a Colorado resident, and
ALLEN VAN WYHE, a Colorado resident,

    Defendants.

GREGORY D. TIMM, a Colorado resident,

    Third-Party Plaintiff,

v.

CHEVRON TCI, INC., a California corporation,

    Third-Party Defendant.

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

The matter before is the **Motion for Summary Judgment of Chevron U.S.A. Inc. and Chevron TCI, Inc.** [#65][1] filed July 30, 2010. I grant the motion.[2]

---

[1] "[#65]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the briefs. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

## I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. ***See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation***, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002). In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Concrete Works, Inc.***, 36 F.3d at 1518. All the evidence must

2

be viewed in the light most favorable to the party opposing the motion. *Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999).

### III. ANALYSIS

This is an action for breach of a Guaranty Agreement executed by defendants in favor of plaintiff. Plaintiff has moved for summary judgment on its claims for breach of the agreement as well as on defendant Gregory Timms's counterclaims against it. The third-party plaintiff joins in the motion to the extent it implicates Timm's third-party claims against it. I grant the motion in both respects.

In 2005, defendants took advantage of an opportunity to invest in the purchase and rehabilitation of the former TWA Administrative Building (the "TWA Building") in Kansas City, Missouri. In 2007, defendants became aware that the project could qualify for so-called historic tax credits under the Internal Revenue Code and solicited plaintiff to make a historic tax credit investment in the project.[3] To facilitate this investment, defendants incorporated three entities. The first, 11500, LLC (the "Owner"), purchased the TWA Building. The second, 11500 Manager, LLC (the "Manager"), was designed to

---

[3] Historic tax credits may be issued to those who submit to the National Park Service plans to rehabilitate and restore properties that certified as historic structures, when such restoration and rehabilitation is completed to the satisfaction of the National Park Service. Historic tax credits represent a dollar-for-dollar credit against federal taxes owed. *See* 26 U.S.C. § 47. (*See also* Plf. Motion App., Sheehy Decl. ¶¶ 18-19 at 3.)

serve as the managing member of the third entity, 11500 Lessee, LLC (the "Tenant"), who was intended to be the building's principal tenant.  In connection with these arrangements, plaintiff and the Manager executed a Tenant Operating Agreement making plaintiff the 99.99 per cent investor member in the Tenant and the Manager its managing member.  The Tenant Operating Agreement provided that the Tenant would allocate 99.99 per cent of its profits, losses, and tax credits to plaintiff.

At the same time, the Owner and the Tenant entered into an agreement to lease the TWA Building to the Tenant (the "Lease"), as well as a Pass-Through Agreement (the "Pass-Through Agreement"), providing that the Owner would "pass-through" any historic tax credits generated from the restoration of the TWA Building to the Tenant. By virtue of these various agreements, 99.99 per cent of the historic tax credits generated by the project would pass from the Owner to the Tenant and then ultimately to plaintiff.  In exchange, plaintiff agreed to invest a total of $7,716,728 in the project.

Meanwhile, in addition to plaintiff's investment, defendants had received some $18 million in loans from Columbian Bank and Trust Company to finance the project.  In August, 2008, the bank was placed into receivership.  Believing that the FDIC might allow them to purchase or renegotiate the loan if it were considered under-performing, defendants elected to stop payment of the promissory note securing the loans.  Their gamble backfired when the FDIC prohibited them from bidding on the note as "insiders." Instead, the promissory note was purchased at auction by another entity and subsequently declared in default, accelerating payment of all principal and interest owing thereunder.

In light of these developments, the Owner filed for bankruptcy.  Ultimately, it

entered into a settlement, approved by the bankruptcy court, by which it transferred ownership of the TWA Building free and clear of the Lease between itself and the Tenant. Obviously and as a result, the Owner can no longer accrue historic tax credits.

Pursuant to the terms of the Tenant Operating Agreement in the event of any material breach of any "Project Documents," including the Lease and the Pass-Through Agreement, plaintiff may require the Manager to repurchase its entire interest in the Tenant for an amount equal to plaintiff's paid-in capital contribution, plus interest. This obligation is specifically secured by the Guaranty Agreement on which plaintiff sues here. Under the terms of the Guaranty Agreement, defendants "unconditionally and irrevocably" guaranteed that, to the extent not performed by the Manager or the Tenant, they would "re-pay [plaintiff's] paid in Capital Contributions to the Company in the event [plaintiff] elects to have its Interest repurchased pursuant to Section 7.4P of the Operating Agreement." (Plf. Motion App., Sheehy Decl. Exh. 15 ¶ 1 at 1.) Plaintiff has elected repayment, but to date, defendants have not repurchased its interest in the Tenant. As of the date of the filing of its motion, plaintiff was owed $6,995,228 in principal and interest.

Under Missouri law, which controls (*see id.*, Sheehy Decl. Exh. 15 ¶ 10 at 5), a claim for breach of a guaranty agreement requires proof of the following four essential elements:

> (1) that the defendant executed the guaranty, (2) that the defendant unconditionally delivered the guaranty to the creditor, (3) that the creditor, in reliance on the guaranty, thereafter extended credit to the debtor, and (4) that there is currently due and owing some sum of money from the debtor to the creditor that the guaranty purports to cover.

5

*ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. 1993). The first three of these elements are easily established and not in serious dispute.[4] The Guaranty Agreement was signed and notarized by each defendant on December 24, 2007. (Plf. Motion App., Sheehy Decl. Exh. 15 at 8-10.) The agreement on its face states that it is unconditional, and defendants Carpenter and Van Wyhe acknowledge that they understood the nature of the promise they made. (*Id.*, Krumholz Decl. Exh. 1 at 69-71; Exh. 3 at 61-63.) It is also patently clear that plaintiff extended credit to the Tenant.

As to the final element, plaintiff has submitted evidence establishing that there is money due and owing for a debt which the Guaranty Agreement contemplated. Even if Carpenter and Van Wyhe had not admitted that the bankruptcy of the Tenant constituted a default under the terms of both the Lease and the Pass-Through Agreement (*see id.*, Exh. 1 at 68-69; Exh. 3 at 86-87; *see also id.*, Sheehy Decl. Exh. 3 § 19.1(f); Exh. 4 at 8), the language of these documents could not be plainer. In addition, the Tenant Operating Agreement defines "Material Breach" to include "the inability (for any reason) of [the Tenant] to claim at least 75%" of the historic tax credits contemplated by the contract. (*Id.*, Sheehy Decl. Exh. 2 at 14-15,19 & Addendum.) The Tenant has claimed only 57 per cent of the "Projected Credit" and now is unable to claim any further historic tax credits associated with the project. All three of these contracts are Project Documents as defined by the Guaranty Agreement, the default of

---

[4] Although defendant Timm claims plaintiff has not shown that he executed or delivered the agreement, he presents no evidence to substantiate those assertions, and plaintiff's evidence clearly shows unconditional execution and delivery as to all three defendants. (*See* Plf. Reply App., Supp Krumholz Aff. Exh. 2.)

which triggers the obligation to repurchase plaintiff's interest.  (*Id.*, Sheehy Decl. Exh. 15 ¶ 1 at 1.)

None of defendants' various arguments in response has merit.  Defendant Timm, proceeding independently and *pro se*,[5] argues that plaintiff should be estopped from recovering on its claim because it failed to make the 2009 "Base Building Installment" payment due under terms of the Tenant Operating Agreement.  Assuming *arguendo* that estoppel is available in these circumstances,[6] Timm's argument fails on its factual premise.  Although such payments were originally contemplated by the contract, based on later developments, plaintiff subsequently agreed to fund the 2008 installment, "provided that no further Installments shall be funded until such time as [plaintiff] is able to confirm completion of the Environmental Remediation."  (*See* Plf. Motion App., Sheehy Decl. Exh. 14 at 1.)  Timm himself signed this document, acknowledging and agreeing on behalf of the Manager to this modification of plaintiff's obligations.  (*Id.*, Exh. 14 at 2.)

Timm also maintains that plaintiff cannot recover because it breached, in some

---

[5] Timm further maintains that his response to plaintiff's motion should await the grant of his motion to compel production of documents from plaintiff.  That request turned out to be overly optimistic, as the magistrate judge soundly rejected Timm's motion, finding the discovery sought thereby to be irrelevant, the request to be untimely, and characterizing the motion as nothing more than "a fishing expedition."  (**Minute Order** at 1-2 [#93], filed September 13, 2010.)  That order was not appealed in the time allowed by law and thus, now provides no basis for assignment of error.  **FED.R.CIV.P.** 72(a) ("A party may not assign as error a defect in the [magistrate judge's non-dispositive] order not timely objected to.").

[6] Because Timm is proceeding *pro se*, I have construed his pleadings more liberally and held them to a less stringent standard than formal pleadings drafted by lawyers.  *See* ***Erickson v. Pardus***, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); ***Andrews v. Heaton***, 483 F.3d 1070, 1076 (10th Cir. 2007); ***Hall v. Belmon***, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing ***Haines v. Kerner***, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96, 30 L.Ed.2d 652 (1972)).

manner that is not entirely clear from the pleadings or the briefs,[7] fiduciary duties in connection with the transaction. However, nothing in the record suggests that the relationship between plaintiff and defendants was in any way fiduciary in nature. The relationship between and among creditor, debtor, and guarantor is not typically a fiduciary one. **See Lemay Bank and Trust Co. v. Harper**, 810 S.W.2d 690, 693 (Mo. App. 1991) (citing **Centerre Bank of Kansas City, N.A. v. Distributors, Inc.**, 705 S.W.2d 42, 48, 53 (Mo. App. 1985)). Nor does the implied duty of good faith and fair dealing inherent to every contract give rise to fiduciary obligations on the part of parties dealing with one another at arm's length. **Comprehensive Care Corp. v. RehabCare Corp.**, 98 F.3d 1063, 1066 (8th Cir. 1996) (applying Missouri law). The mere fact that plaintiff authored the agreements under which it now sues does not in itself give rise to a fiduciary duty either. Nothing in the record suggests that the Guaranty Agreement or any of the other contracts were contracts of adhesion. More particularly, there is no evidence that plaintiff possessed superior bargaining power, that defendants had no or few other options to find financing for their project, that defendants had no means for negotiating the terms of these contracts, or that the contracts were presented on a "take it or leave it" basis. **See State ex rel. Vincent v. Schneider**, 194 S.W.3d 853, 856-57 (Mo. 2006).

Timm alternatively maintains that defendants were sureties rather than guarantors. His apparent assumption that a surety relationship is necessarily fiduciary

---

[7] As best the court can discern, Timm appears to allege that plaintiff and its attorneys structured the Manager in such a way so as to ensure that it never had assets available to fulfill the repurchase obligation. (**See Defendant Timm's Response in Opposition to Motion for Summary Judgment** at 9 [#81], filed August 22, 2010.)

8

finds no support in Missouri law.[8] *See Auto-Owners Insurance Co. v. Midwest Agency*, 2007 WL 2885345 at *3 (E.D. Mo. Sept. 27, 2007). In fact, the contract was clearly entitled "Guaranty Agreement" and refers to itself consistently as a guaranty. Unlike a suretyship, it is structured not as a joint obligation of defendants and the Manager, but a secondary obligation on the part of defendants to answer for the debt of the Manager should it fail to do so. *See Patterson v. Katt*, 791 S.W.2d 466, 468 (Mo. App. 1991); *Beauchamp v. North American Savings Association*, 543 S.W.2d 536, 537-38 (Mo. App. 1976). In addition, the agreement specifically provides that it "shall be effective as a waiver of, and [defendants] hereby expressly waive[], any and all rights to which [they] may otherwise have been entitled under any suretyship laws in effect from time to time in the State." (Plf. Motion App., Sheehy Decl. Exh. 15 ¶ 4 at 2.) Timm's argument in this regard clearly is feckless.

Likewise, defendants' assertion of improper venue is meritless, indeed almost frivolous. This argument is premised on the venue selection clause of the Tenant Operating Agreement, pursuant to which plaintiff consented to file any suit for violation thereof in the courts of Missouri. (*Id.*, Sheehy Decl. Exh. 2 § 13.8(d)(I) at 79-80.) Plaintiff's claim in this lawsuit, by contrast, is for breach of the Guaranty Agreement, which contains no choice of venue clause. Moreover, having filed answers to the complaint (**Answer, Counterclaims and Third Party Complaint of Timm** [#50], filed January 22, 2010; **Answer of Defendants Carpenter and Van Wyhe** [#29], filed December 29, 2009), defendants have waived any right to complain of allegedly

---

[8] Nor does the very authority to which Timm cites. *See SNML Corp. v. Bank of North Carolina*, 254 S.E.2d 274, 279 (N.C. App. 1979).

9

improper venue in any event, **FED.R.CIV.P.** 12(b)(3).

Finally, defendants maintain that plaintiff's request for judgment constitutes a windfall, noting that it received more than $4 million in historic tax credits prior to the sale of the property. The quasi-contractual doctrine of unjust enrichment, however, has no bearing on an obligation created by express contract. ***See Al-Khaldiya Electronics and Electrical Equipment Co. v. The Boeing Co.***, 571 F.3d 754, 759 (8th Cir. 2009) (applying Missouri law). Moreover, it appears that any historic tax credits previously claimed are subject to recapture as a matter of law because the property ceased to qualify as an investment credit property within five years of the date it was placed in service. ***See*** 26 U.S.C. § 50.[9]

For these reasons, I find and conclude that plaintiff is entitled to summary judgment on its claim for breach of the Guaranty Agreement. Under the terms of that contract, plaintiff is owed its paid-in capital contribution plus interest at the lesser of (1) the designated prime rate, plus eight per cent; or (2) the maximum rate allowed by law, compounded annually from the date the capital was contributed until the date payment is made. (Plf. Motion App., Sheehy Decl. Exh. 2 ¶ 7.4P at 54.) Given the lapse of time between the filing of plaintiff's motion and the date of this order, during which interest may have continued to accrue, I will direct plaintiff to submit a motion for entry of judgment proving up the current amount due and owing.[10]

---

[9] To the extent defendants have evidence showing that plaintiff's previously claimed historic tax credits have not been recaptured in full or in part, they may submit same in response to the motion for entry of judgment I have directed plaintiff to file by this order.

[10] This motion should demonstrate also that the applicable interest rate chosen is the lesser of the two options provided by the Guaranty Agreement.

Plaintiff also moves for summary judgment as to Timm's three counterclaims against it, and third-party plaintiff has moved for judgment as to the two coinciding third-party claims in which it is implicated. Timm has offered no evidence to suggest that a genuine issue of material fact exists as to any of his counterclaims or third-party claims, stating instead that it is not his burden at this juncture to offer proof. In this, he is plainly mistaken. Plaintiff's burden is simply to point out the absence of evidence supporting Timm's counterclaims/third-party claims, after which it is incumbent on Timm, as the party who will bear the burden of proof at trial, to come forward with evidence suggesting the existence of a genuine issue of material fact suitable for trial. **See Concrete Works, Inc.**, 36 F.3d at 1517. He has failed to even attempt to do so, and the motion for summary judgment as to his counterclaims and third-party claims may be granted on that basis alone.

Moreover, and even though it is not the court's role to make arguments or supply facts for a *pro se* party, I find that the counterclaims and third-party claims fail on their own merits as well. As noted above, the evidence in this case does not support Timm's assertions that plaintiff breached the Tenant Operating Agreement by failing to pay the 2009 Base Building Installment (*see* Plf. Motion App., Sheehy Decl. Exh. 14), or that plaintiff owes Timm or any other defendant a fiduciary duty. His counterclaims and third-party claims based on such allegations therefore cannot stand. Nor is there actual evidence of plaintiff's alleged oral promise to loan the Tenant $3 million. Assuming *arguendo* that plaintiff or its authorized agent made such a commitment, Timm has asserted that the alleged agreement called for the payment of interest. (**See id.**,

Krumholz Decl. Exh. 2 at 36.) However, he submits neither argument nor evidence suggesting an agreement as to the rate of interest on this alleged loan. The absence of such a material term from a contract, oral or otherwise, makes it unenforceable as a matter of law. *See New York Life Insurance Co. v. K N Energy, Inc.*, 80 F.3d 405, 411 (10th Cir. 1996) (applying Colorado law); *Middleton Enterprises, Inc. v. Churm*, 618 F.Supp. 477, 480 (E.D. Mo. 1985) (applying Missouri law).

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Motion for Summary Judgment of Chevron U.S.A. Inc. and Chevron TCI, Inc.** [#65] filed July 30, 2010, is **GRANTED**;

2. That by **Friday, October 15, 2010**, plaintiff, Chevron U.S.A., Inc., is **DIRECTED** to file with the court a motion for entry of judgment on the terms of this order, including proof of its damages through the date of such motion and a method for calculating additional interest to the date of the judgment, if appropriate, as well as demonstrating which of the two methods of calculating interest provided by the Guaranty Agreement is appropriate; the time for filing of defendants' responses and plaintiff's reply, if any, shall be as set forth in **D.C.COLO.LCivR** 7.1C.;

3. That the counterclaims asserted against plaintiff, Chevron U.S.A., Inc., as well as the third-party claims asserted against the third-party defendant, Chevron TCI, Inc., by defendant, Gregory D. Timm, are **DISMISSED WITH PREJUDICE**;

4. That the **Motion of Chevron U.S.A. Inc. To Enforce Waiver of Jury Trial and Certification of Compliance With D.C.COLO.LCivR 7.1** [#95] filed September 24,

2010, is **DENIED AS MOOT**; and

    5. That the Trial Preparation Conference, currently scheduled for Friday, October 8, 2010, at 9:30 a.m., as well as the trial, currently scheduled to commence on Monday October 25, 2010, are **VACATED**.

    Dated October 6, 2010, at Denver, Colorado.

                                        **BY THE COURT:**

                                        */s/ Robert E. Blackburn*
                                        Robert E. Blackburn
                                        United States District Judge